# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        No. CR 19-0491 RB

LORENZO NARANJO-CASTRO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Mr. Naranjo-Castro's Motion for Order for Compassionate Release and Memorandum in Support, filed on November 24, 2020. (Doc. 67.) Having reviewed the parties' submissions, the record, and the applicable law, the Court finds the motion is well-taken and should be **GRANTED**.

## I.    Background

On September 4, 2019, Mr. Naranjo-Castro pled guilty to a seven-count Information charging: (1) aggravated identity theft, in violation of 18 U.S.C. § 1028A; (2) two counts of Social Security fraud, in violation of 42 U.S.C. § 408; (3) two counts of making a false statement, in violation of 18 U.S.C. § 1001; and (4) two counts of harboring illegal aliens, in violation of 8 U.S.C. § 1324. (Docs. 45; 48–49.) The Court sentenced Mr. Naranjo-Castro to 38 months imprisonment. (Docs. 57–59.)

Mr. Naranjo-Castro has served approximately 27 months.  His anticipated release date is August 17, 2021. *See* Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Feb. 26, 2021). He now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce his sentence due to the COVID-19 pandemic. (*See* Doc. 67.)

## II.      Discussion

Mr. Naranjo-Castro seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after he has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Mr. Naranjo-Castro filed such a request with Giles W. Dalby Correctional Institution on October 16, 2020. (*See* Doc. 67-1 at 1–2.) The warden acknowledged that Mr. Naranjo-Castro had "provided evidence of . . . extraordinary or compelling circumstances" along with a proposed release plan, but denied the request because Mr. Naranjo-Castro "has an unresolved detainer with ICE." (*See id.* at 11–12.) Thus, the Government concedes that he has exhausted his administrative remedies. (*See* Doc. 68 at 11.)

Mr. Naranjo-Castro asserts that extraordinary and compelling circumstances exist due to the unprecedented COVID-19 pandemic. (Doc. 67 at 3–6.) He argues that his medical conditions put him at risk for severe illness from COVID-19. (*Id.*) The Court agrees that Mr. Naranjo-Castro suffers from medical conditions that put him at risk for severe illness in the face of COVID-19. He has been diagnosed with type 2 diabetes, Hepatitis B and C with cirrhosis, obesity, and hypertension. (*See id.*; Docs. 67-1 at 13; 67-3 at 3, 21, 24, 53, 57, 60, 82, 95–96, 98.) The

Government acknowledges that the CDC lists type 2 diabetes and obesity as medical conditions that put individuals at an increased risk for severe illness from COVID-19. (Doc. 68 at 11–12, 14.) *See also People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021). Thus, the Government concedes that Mr. Naranjo-Castro has demonstrated extraordinary and compelling circumstances that qualify for potential release in the face of the pandemic. (Doc 68 at 11–12.)

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The Government argues that Mr. Naranjo-Castro would pose a danger to public safety if he were to be released. (Doc. 68 at 17–20.) It posits: "being a decades-long identity thief and the manager of an alien stash house where at least one woman was brutalized,[1] demonstrates that he is a danger to society." (*Id.* at 17.) The Government points to his criminal history, which includes a 2002 conviction for aggravated assault with a deadly weapon[2] and a 2004 conviction for driving under the influence. (*Id.*; *see also* Doc. 54 (PSR) ¶¶ 60–61.) Because of these two convictions, Mr. Naranjo-Castro was assigned a criminal history category of III. (PSR ¶ 63.) The Court registers its concern for these convictions, particularly the violent nature of the 2002 conviction, but notes that it occurred almost 20 years ago. Moreover, the record shows that Mr. Naranjo-Castro has not

---

[1] During the investigation of Mr. Naranjo-Castro's most recent charges, one of the women who had been smuggled into the United States reported that "she had been repeatedly sexually assaulted during [that] process[,]" including one occurrence at a stash house owned by Mr. Naranjo-Castro. (*See* PSR ¶¶ 16–17.)

[2] This conviction stems from a hit-and-run motor vehicle crash, where Mr. Naranjo-Castro was driving erratically. (*See* PSR ¶ 60.) The PSR states that after the occupants of the second vehicle exchanged words with Mr. Naranjo-Castro, he then chased them with his vehicle and rammed their vehicle with his. (*Id.*)

4

incurred any disciplinary reports during his 27 months of incarceration, and he has completed at least three certificates related to substance abuse. (*See* Docs. 67 at 19; 67-1 at 12; 67-4.)

Mr. Naranjo-Castro avers that he will live with relatives in Anthony, New Mexico, upon release. (*See* Docs. 67 at 18; 71 at 8.) If permitted, he "will seek employment at Stahmann Farms in the pecan business." (Doc. 67 at 18.) If required, he will live with family in Mexico. (*See. id.*) There is concern about an unresolved ICE detainer; however, the Court finds that the original terms of supervised release remain appropriate: "If the defendant is deported [pursuant to the detainer], the term of Supervised Release shall be Unsupervised. If the defendant is not deported, the [3-year] term of Supervised Release shall be supervised." (Doc. 59 at 4.) The United States Probation Office has verified Mr. Naranjo-Castro's proposed release plan and found that the "residence appears to be suitable for his placement upon his release from custody. (*See* Doc. 73.)

Upon review of the relevant factors, and considering the fact that Mr. Naranjo-Castro has served a large majority of his sentence and is eligible for release in less than six months, the Court finds that the sentence he has served thus far is adequate under § 3553(a), particularly in the face of this novel pandemic, "a risk that the Court did not anticipate and to which it certainly did not intend to expose Mr. [Juaréz] when it sentenced him . . . ." *See United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *4 (D.N.M. May 14, 2020). Accordingly, the Court will grant Mr. Naranjo-Castro's motion and reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

Prior to his release from BOP custody, Mr. Naranjo-Castro must quarantine in BOP custody for a period of 14 days to avoid any potential exposure of the community to COVID-19. BOP shall begin calculation of the 14-day quarantine period on the day BOP receives this Order.

Finally, Mr. Naranjo-Castro must test negative for COVID-19 during his quarantine period, subsequent to any positive tests and prior to his release from BOP custody.

The Court strongly encourages Mr. Naranjo-Castro to seek out drug and alcohol counseling through a 12-step or similar program upon his release and directs him to safely seek gainful employment that will enable him to complete payment of his restitution.

**THEREFORE,**

**IT IS ORDERED** that Mr. Naranjo-Castro's Motion for Order for Compassionate Release and Memorandum in Support (Doc. 67) is **GRANTED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE